**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

PERNELL WILSON,

                            Plaintiff,

        - v -                                      Civ. No. 9:06-CV-175
                                                             (GLS/RFT)

JAMES CAMPBELL, *Sheriff of Albany County*;
THOMAS WIGGER, *Superintendent*,

                            Defendants.

**APPEARANCES:**                               **OF COUNSEL**:

PERNELL WILSON
Plaintiff, *Pro Se*
06-A-6448
Arthur Kill Correctional Facility
2911 Arthur Kill Road
Staten Island, N.Y. 10309

ROCHE CORRIGAN LAW FIRM             ROBERT P. ROCHE, ESQ.
Attorney for Defendants
36 South Pearl St.
Albany, N.Y. 12207

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

     *Pro se* Plaintiff Pernell Wilson brings this civil rights action pursuant to 42 U.S.C. § 1983 alleging that Defendants Campbell and Wigger failed to protect him while he was incarcerated as a pre-trial detainee at the Albany County Correctional Facility in violation of the Eighth Amendment. Dkt. No. 1, Compl. Plaintiff further alleges that several individuals conspired to have him released from a Special Housing Unit (SHU) into the general population so that other inmates would have an opportunity to assault him. *Id*. Defendants now move for Summary Judgment (Dkt.

No. 56), which Plaintiff opposes, (Dkt. No. 61). For the reasons that follow, it is recommended that the Defendants' Motion for Summary Judgment be **granted**.

## I. BACKGROUND

On August 24, 2005, Plaintiff, who was incarcerated in the Albany County Correctional Facility (Albany County) while awaiting trial, was placed in the SHU for disciplinary reasons. Dkt. No. 67, Defs.' Rule 7.1 Statement of Material Facts at ¶ 1.[1] After serving a portion of his time in SHU, Plaintiff's disciplinary sentence was modified on October 3, 2005, by Chief Corrections Officer Mark Kramek[2] as a reward for Wilson's behavior modification. Defs.' 7.1 Statement at ¶ 6. On or about November 28, 2005, Plaintiff filed an Inmate Grievance stating that Corrections Officer (C.O.) Stewart[3] had threatened to kill him, and requesting to be removed from Albany County because he feared for his life. Compl., Ex. A, Inmate Grievance Form, dated Nov. 28, 2005. That Grievance was denied by Grievance Coordinator Courcelle,[4] as were his appeals to the Chief Administrative Officer and the Citizens Policy and Complaint Review Council. *Id*. at p. 2; Compl., Ex. C, Lt. from State Commission of Corr., dated Jan. 5, 2006. The basis for the denials was that an investigation into the matter revealed no evidence that C.O. Stewart threatened Plaintiff, nor that Plaintiff's safety was otherwise in danger. Compl., Ex. A, Inmate Grievance Form, dated Nov. 28, 2005 & Decision of the Chief Admin. Officer, Dated Dec. 1, 2005.

---

[1] When the Plaintiff has not objected to a particular statement of fact proffered in the Defendants' 7.1 Statement, or visa versa, we will not cite to both 7.1 Statements. *See* N.D.N.Y.L.R. 7.1(a)(3) ("Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.") (emphasis in original).

[2] Mark Kramek is not a named Defendant in this action.

[3] C.O. Stewart is not a named Defendant in this action.

[4] Grievance Coordinator Courcelle is not a named Defendant in this action.

Plaintiff asserts that on November 21, 2005, he filed a Complaint to Defendant Superintendent Wigger stating that he feared his life was in danger because C.O. Stewart had called him a rapist in front of other inmates. Compl. at p. 10. Plaintiff further alleges that a family member, Ms. Cleo Childs, called Defendant Sheriff Campbell explaining that Plaintiff's life was in danger and requesting that he move Plaintiff to another facility.[5] *Id.* at p. 11. Plaintiff does not indicate, and the record does not reflect, that any of these complaints warned the Defendants that Plaintiff's release from SHU into the general prison population would put his safety in danger.

As his disciplinary sentence had been reduced, Plaintiff was moved from SHU to the 3-East Housing Unit on December 8, 2005. Dkt. No. 70, Pl.'s Resp. to Defs.' 7.1 Statement, Ex. B, Discharge Form, dated Dec. 8, 2005. The next day Plaintiff was assaulted by two inmates outside of his cell who broke his jaw and caused Plaintiff to be hospitalized for two days. Dkt. No. 70, Ex. A, Incident Rep., dated Dec. 9, 2005; Defs.' 7.1 Statement at ¶ 7. The two inmates who assaulted Plaintiff were charged, prosecuted, and punished for their crime. Defs.' 7.1 Statement at ¶ 8.

Plaintiff asserts Defendants Wigger and Campbell failed to protect him and thus violated their duty of care. *Id.*

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that there is no

---

[5] Plaintiff does not state when this alleged call was made.

genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts submitted by the movant. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) and *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any

genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

### B. Failure to Protect

It appears from Plaintiff's submissions that at all times relevant to his constitutional claims, he was incarcerated as a pre-trial detainee at Albany County. Thus, the proper analysis of Plaintiff's claim is under the Due Process Clause of the Fourteenth Amendment. *Lareau v. Manson*, 651 F.2d 96, 102 (2d Cir. 1981) (constitutional standard for substantive rights of pre-trial detainees is Fourteenth Amendment due process) (cited in *Bowman v. Campbell*, 850 F. Supp. 144, 147 (N.D.N.Y. 1994)); *see also Johnson v. Glick*, 481 F.2d 1028, 1032 (2d Cir. 1973) (Eighth Amendment does not apply prior to conviction and therefore is not applicable to pre-trial detainees). Because a person "lawfully committed to pretrial detention has not been adjudged guilty of any crime," pre-trial detainees "may not be punished in any manner–neither cruelly and unusually nor otherwise." *Benjamin v. Fraser*, 343 F.3d 35, 49-50 (2d Cir. 2003) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979)). Nonetheless, "[t]he standard for analyzing a pretrial detainee's Fourteenth Amendment claim is the same as the Eighth Amendment standard." *Bourdon v. Roney*, 2003 WL 21058177, at *10 (N.D.N.Y. Mar. 6, 2003) (citing *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir.

1996)); *see also Walton v. Breeyear*, 2007 WL 446010, at *8 n.16 (N.D.N.Y. Feb. 8, 2007) (noting that Fourteenth Amendment protections for pretrial detainees provide parallel "protection" of those Eighth Amendment protections for sentenced prisoners). Thus, we will analyze Plaintiff's due process claim under the Eighth Amendment standard.

Plaintiff asserts that the Defendants should be held liable because they were warned about the risks to his safety and failed to act in response. A prison inmate has a constitutional right under the Eighth and Fourteenth Amendments to be free from the "unnecessary and wanton infliction of pain." *Hendricks v. Coughlin*, 942 F.2d 109, 112 (2d Cir.1991) (citation omitted). The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (1996); *Heisler v. Kralik*, 981 F. Supp. 830, 837 (S.D.N.Y. 1997) ("[p]rison officials have a constitutional duty to act reasonably to ensure a safe environment for a prisoner when they are aware that there is a significant risk of serious injury to that prisoner."); *see also Hendricks v. Coughlin*, 942 F.2d at 113; *Avincola v. New York State Dep't of Corr. Servs.*, 1998 WL 146280, at *3 (N.D.N.Y. Mar. 27, 1998).

In order to state such a claim, the prisoner must demonstrate that the prison officials "acted with deliberate indifference with respect to his safety or with an intent to cause harm to him." *Hendricks v. Coughlin*, 942 F.2d at 113. A showing of mere negligence on behalf of the defendants is not enough to state a constitutional claim. *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (cited in *Hendricks v. Coughlin*, 942 F.2d at 113); *Daniels v. Williams*, 474 U.S. 327, 328 (1985). The key element of a failure to protect claim is the existence or potential existence of a substantial risk of serious harm and not the actual harm which may or may not ensue. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). To prove deliberate indifference, the plaintiff must show that the "official knew

of and disregarded an excessive risk to the plaintiff's health or safety." *Id*. at 837 (cited in *Ramirez v. Mantello*, 1998 WL 146246, at \*2 (N.D.N.Y. Mar. 24, 1998). "The official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists *and* he must also draw the inference." *Id.* at 836 (emphasis in original).

Further, a supervisor can be held liable when he or she has actual or constructive notice of unconstitutional practices but similarly acted with gross negligence or deliberate indifference in failing to act. *See Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989). "Such a supervisor may not escape the consequences of his or her failure to act by pleading the doctrine of qualified immunity." *Fossett v. Morris*, 1991 WL 67093, at \*3 (S.D.N.Y. Apr. 22, 1991).

Based on the record before us, there is no admissible evidence that either Defendant was aware that Plaintiff faced a substantial risk of serious harm. Plaintiff asserts he filed a Complaint with Defendant Wigger stating that he felt his life was in danger, and that a member of his family called Defendant Campbell and explained that Plaintiff's life was in danger and requested that he be moved to another facility. Compl. at p. 11. Regarding the alleged phone call, such a statement is hearsay and is therefore non-admissible evidence which cannot be considered in this Motion for Summary Judgment. *See Bickerstaff v. Vassar College*, 196 F.3d 435, 447 (2d Cir. 1999) (affirming that even for summary judgment purposes, evidence must be admissible); *Barau v. Credit Lyonnais-U.S. Branches*, 1998 WL 915892, at \*4 (S.D.N.Y. Dec. 30, 1998) (granting summary judgment where "much of the plaintiff's proffered 'evidence' is either inadmissible hearsay or so conclusory as to fail to satisfy the requirements of [Federal] Rule [of Civil Procedure] 56(e).").

Considering now the alleged Complaint sent to Defendant Wigger, there is no such Complaint on the record apart from the Inmate Grievance Form submitted by Plaintiff on November

28, 2005. As discussed above, Plaintiff stated in the Grievance that C.O. Stewart had threatened him and he requested to be transferred to another facility. That Grievance was denied both initially and on appeal. In response to Plaintiff's safety concerns, the initial denial noted that Plaintiff was "in a camera cell in the SHU Unit, where he is watched 24 hours a day." Compl., Ex. A, Grievance, dated Nov. 28, 2005. Additionally, an investigation revealed no evidence that Plaintiff was threatened by C.O. Stewart. *Id*. at p. 2, Decision of the Chief Admin. Officer, dated Dec. 1, 2005. Thus, Plaintiff's fears with respect to C.O. Stewart were investigated and ultimately rejected.

There is no evidence on the record that either named Defendant was warned that Plaintiff's safety would be in danger should he be released from SHU. Plaintiff's Grievance did not indicate any other threat besides C.O. Stewart, nor did his general request to be moved to another facility put the Defendants on notice as to any potential threat that existed in the general prison population. A general, conclusory statement that an inmate fears for his safety, without more, is insufficient information from which an inference can been drawn that such inmate's a safety is actually at risk. *See Arroyo v. Coughlin*, 1993 WL 117529, at *1 (W.D.N.Y. Apr. 13, 1993) ("An official demonstrates deliberate indifference when he has actual or constructive notice of a specific risk to an inmate's safety and fails to take steps to protect the inmate from injury.") (citing *Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989)); *see also Sims v. Bowen*, 1998 WL 146409, at *3 (N.D.N.Y. Mar. 23, 1998) (stating that "an inmate must inform a correctional official of the basis for his belief that another inmate represents a substantial threat to his safety before the correctional official can be charged with deliberate indifference"). Thus, because there is no evidence nor indication that the Defendants were warned about the potential threat to Plaintiff's safety should he be released into the general population, Plaintiff has failed to make a valid constitutional claim.

-*8*-

*Farmer v. Brennan*, 511 U.S. at 837 (plaintiff must show that the "official knew of and disregarded an excessive risk to the plaintiff's health or safety.").

Therefore, it is recommended that Defendants' Motion for Summary Judgment be **granted** as to Plaintiff's Eighth Amendment failure to protect claim.

### C. Personal Involvement and Supervisory Liability

Plaintiff asserts that C.O. Stewart and Mark Kramek arranged for Plaintiff to be released from SHU because they knew that once released, Plaintiff would be assaulted by other inmates in the general prison population due to the fact that his high profile rape charge was well known. Compl. at pp. 7-11. Although the bulk of Plaintiff's Complaint focuses on the actions of Stewart and Kramek, those individuals are not named as Defendants in this action. *See generally* Compl. Plaintiff does not overtly assert that Defendants Wigger and Campbell were part of this alleged conspiracy, though he maintains that they failed to exercise reasonable care in protecting him. *Id*. at p. 11.

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted). Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement. Therefore, a prison official may not be found liable for a constitutional violation merely because of the acts of those under his control." *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted).

If a plaintiff seeks to bring a § 1983 action for supervisory liability, liability on the part of

*-9-*

the supervisor may exist

> in one or more of the following ways: 1) actual direct participation in the constitutional violation, 2) failure to remedy a wrong after being informed through a report or appeal, 3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, 4) grossly negligent supervision of subordinates who committed a violation, or 5) failure to act on information indicating that unconstitutional acts were occurring.

*Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003) (citing *Colon v. Coughlin*, 58 F.3d at 873) (further citations omitted).

As stated above, Plaintiff does not allege that the Defendants directly participated in the alleged conspiracy to release him into the general prison population. Nor does Plaintiff allege that the Defendants failed to remedy a wrong that befell him. To the contrary, the record shows Defendant James Campbell investigated the assault on Plaintiff, and that the responsible inmates were arrested and punished. Dkt. No. 61, Pl.'s Opp. to Defs.' Mot. for Summ. J., Ex. G, Investigative Rep., dated Jan. 25, 2006; Dkt. No. 56-7, Mark Kramek, Assistant Superintendent, Albany County Corr. Facility, Aff., dated Aug. 14, 2007, at p. 3.

To the extent Plaintiff is claiming that the Defendants created an unconstitutional policy or custom by allowing inmates charged with rape to be released into the general population, that claim must also fail. Plaintiff asserts that the general prison population knew about his rape charge because it was reported in the media and because C.O. Stewart called him a rapist within earshot of other inmates. Plaintiff contends it was for that reason he was attacked upon his release into the general population. Pl.'s Opp. to Defs.' Mot. for Summ. J. at ¶¶ 5-6. The record shows that there was no policy of controlling what information inmates received via the press in Albany County. Dkt. No. 56-4, James I. Campbell, Sheriff of Albany County, Aff., dated Aug. 20, 2007. Nor does Albany County have a policy or custom of segregating inmates in any way based on the crime for

which they have been convicted or charged. *Id*. These policies do not sanction unconstitutional conduct, rather, they serve the purpose of protecting the individual privacy of inmates and providing access to information from the outside world. Thus, implementation of these policies does not create supervisory liability on the part of Defendants.

Finally, there is no accusation nor evidence in the record to indicate that the Defendants were grossly negligent in their supervision of subordinates. Plaintiff's accusations against C.O. Stewart were duly investigated and subsequently dismissed by prison personnel. And, as discussed above, Defendants did not have any advance warning that Plaintiff's safety would be in jeopardy once released into the general population. Thus, there is no ground upon which supervisory liability can attach to the Defendants.

Therefore, it is recommended that Plaintiff's claim on this ground be **dismissed**.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 56) be **granted**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R.

CIV. P. 72, 6(a), & 6(e).

Date: February 11, 2008
        Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge

*-12-*